Good morning. Jeffrey Jones for the appellant, Dylan Zara. I'd like to reserve two minutes for rebuttal, if I may. With regard to the condition of supervised release prohibiting alcohol, under this Court's decision in the United States v. Betts, where alcohol consumption plays no role in the offense, such a condition must be supported by a history of alcohol abuse or a history of problems with other substance abuse. Thus, under Betts, a defendant's use of other intoxicants, like marijuana in this case, can support a no-alcohol condition, but as with alcohol consumption itself, the use of intoxicants has to reach a level where it threatens the goals of the statute of Section 3583. In Mr. Zara's case, his offense conduct involved no alcohol or other intoxicant use, and his consumption of alcohol was only occasional and moderate. He was essentially a non-drinker. He didn't admit to substance use? Yes, ma'am. Did he not? He admitted to substance use on a weekly basis? He admitted to ingesting a moderate amount of marijuana once or twice a week. Right. And then he also admitted, I think I saw on the PSR, that he had addictive personality behavior. Yes, I think he did. So it seems to me, or tell me, why under plain error review, it wouldn't be appropriate to have the restriction on alcohol. Well, I believe even under plain error review, which is the review here, his – that a lifetime prohibition on alcohol is not reasonably – not reasonably necessary to address those issues. His addiction – Why under plain error review? Well, because I believe the authority is clearly to the contrary. United States v. Betts being on point. Is there a difference between the type of crime that could be relevant here? The Betts crime was some kind of financial fraud crime, which maybe doesn't involve the same kind of impulse control issues as the crime here. Yes. I think that could go – I think that could go to the – to whether the condition is reasonably necessary. In this case, though, where you have no history of alcohol abuse and you impose a lifetime ban, it's a question of whether he has any issue with alcohol abuse. He reached his early 30s without ever – without ever drinking. And – So what the – so I take it that you would read the alcohol ban to not include ethyl alcohol, for example, which I guess was mixed with the marijuana from time to time? I believe he used a – he used a solution where they use alcohol to leach out the marijuana. I – well, obviously, marijuana is out of – out of bounds. That's illegal. I don't think that – I think his alcohol consumption was very minimal, the record shows. Let's talk about the software – I'm sorry – software modification condition. Yes. I'm just trying to figure out why – I mean, it seems like under these circumstances, again, there was no objection, so the judge couldn't really address it, but it seems in light of how much he relied on the computer to distribute child pornography and communicate with others who were interested in his child pornography and all the unseemly facts related to this incident, that it would have been perfectly reasonable, it seems like, to have banned him to use any computer. And so I'm trying to figure out why we're just focusing on the modification when, really, I think there would have been sufficient justification to say, you know, you can't use a computer ever again. And in that – in that regard, he only invokes – he only invokes the Goddard decision, which simply – it isn't about giving him any freedom on the computer. It's simply about avoiding his supervised release being violated because of a software modification that would occur automatically. It's entirely based on Goddard. Goddard and Mr. Zara doesn't contest that computer monitoring and that his use of computers – it absolutely was a computer crime. And in this sort of – I mean, the precedent shows in this – But, I mean, but even if you look at Goddard, I think any routine or automatic update would not be a knowing violation, so I don't know that we'd need to do anything. It could be a knowing – it could be a knowing violation because if you have knowledge that your software is going to be updated, which anyone would when it – when you hook it up to the Internet, in Goddard, the court ruled that that – that that condition was overbroad and unworkable. But why can't we just construe it as consistent with Goddard? So why can't we just affirm and say this means that automatic updates aren't included? The panel – the panel could do that. The reason he asked for remand is because under the authority of the circuit, that's a disfavored procedure. If one looks at the – at the Wolfchild case, the sales decision, which is also relevant to the alcohol decision – the alcohol condition, a number of other cases, there are cases that do that, including Goddard, but there's a minority of cases, and there's a lot of authority in this circuit that holds that remand is the proper procedure, and this Court should not modify conditions on a bill. In the recent case, NERC, we didn't remand, right? In which case? NERC? Yes. Yes. And Justice Smith's dissent, I think, basically discusses – puts forth better than I can the problem with that procedure and how it's disfavored in this circuit, though it happens. I'd like to talk about the direct view issue. And, you know, there's different ways you could construe it grammatically. But as I read the government's brief, that basically they were construing the earlier parts of that sentence, including parks and pools, to mean primarily used by minors. If it were construed that way, and either construed or remanded, would that solve your issue? That would – that would resolve that issue. Okay. With regard to the objection about parks being overbought and public pools, that would absolutely solve it. The only concern is that it's not limited to children's places where children gather. But we could fix that by construing it. By construing it that way. And my only comment would be the same thing I said about the last condition, that this circuit's authority, I think, is – says the better procedure is to remand for that – for the conditions to be changed. How about let's talk about the having been able to have materials. I think it's the Cope case. Yes. Because it looks like in light of Cope, you're arguing that that has to be modified or sent back to the district court, judge, that condition. But I'm just – I'm curious under what circumstance would someone who has been, you know, be able to collaterally attack their sentence 40 years after – or 45 years after they have been sentenced and then are released? I'm not quite sure I understand that. And so I'm just wondering why we would do that. I can – I think under the Cope decision, it also would have been the case that his – that the AEDPA statute of limitations would have run. An example I can give is – But it wasn't argued. It wasn't argued that, you know, he really would be no longer able to collaterally attack it. It wasn't an issue raised. And it's being raised here, and quite frankly, I find it a persuasive point. I don't understand. I mean, because someone like this, who – with his issues and what – his conduct and what he's done here, I just think – I don't know why we would, under plain error review, give him the ability to possess any materials. If he did have a chance to collaterally attack it, I understand and Cope is the law. But I don't – I'm trying to figure out under what circumstance that would be. I think there are circumstances. Section 2255 will be – will be untimely. But in California, one can seek expungement of a conviction, or – and you can seek relief from – there's a number of procedures to seek relief from collateral consequences, to regain the right to vote. And this doesn't seem like an offense where expungement – that we're expunging the conviction would ever be available, because it's such a serious offense. But that procedure does exist. And there's not a time – it's not – there's no time limit on it. In fact, the more time that goes by – And there's no – I don't know California. This is a California case. There's no exceptions or limitations on expungement in California? I'm not – I know that it's – I know that it's available, and I know that there's no time limit. You could – one could seek pardon from the governor, which is, again, a long shot. But there are – I think that it's an open list of available procedures not to set aside the conviction, but to address the collateral consequences of it, or – Do you need the collateral attack reason under Cope, or is the sex offender treatment program reason enough? It seemed like you were arguing under Cope that he might need this material for a sex offender treatment program, as well as for a collateral attack. That's – that's quite possible. And for that, the authority I invoked for that is the Cope decision itself. That was a concern in that case. And read – to be honest, I read the Cope decision, and I thought it applies every bit – the principles discussed there in the holding applies on all four points to this case. And that's the entire basis for the claim. You want to save – well, you have eight seconds. I'm going to give you more than eight seconds. Thank you. Good morning. May it please the Court, my name is Mary Jean Chan, and I represent the United States in this appeal. The Court is exactly right, which is that the PSR recommendation set forth all the conditions that are being contested, as well as justifications for them. None of these conditions implicate a particularly significant liberty interest. And so the record and the PSR plainly support that these are reasonably necessary to effectuate the three goals of supervised release. That is the protection of society, the rehabilitation of ZARA, as well as the deterrence of criminal conduct. And so the district court did not plainly err in this case. I'd like to turn first to the explicit sexual materials condition. And the defendant claims that this is not distinguishable from COPE on the two grounds, which is that it's necessary – those materials are necessary for collateral attack, as well as as part of sexual offender treatment. And I want to explain why that's not true under COPE. First of all, as Murguia talked about with collateral attack, COPE is really restricted to collateral attack of this particular conviction. It doesn't talk about collateral attack of collateral consequences, so it's restricted to that. And as the – as defense counsel just conceded, there's really no conceivable relief under collateral attack under 2255. Everything is hypothetical. And this court, although it has jurisdiction to obviously assess these conditions of supervised release, it also has the authority to say that these kinds of claims are premature if it's completely – they can't even name what kind of collateral attack they're talking about or why possession of descriptions of child pornography are necessary to prepare that kind of collateral attack. As to the sex offender treatment condition, in COPE, that sex offender treatment condition did not indicate that it was subject to the direction of the probation officer, as it is in this case. In COPE, it was simply that the defendant was required to undergo sexual offender treatment, and so that was up to whoever was going to be administering that. And it was conceivable that there would be a condition that the defendant would have to write a sexual autobiography, create child pornography or descriptions of child pornography as part of that. And that would put the defendant in a rock and a hard place. Here you have it under the supervision of the probation officer who is charged with making sure that the defendant complies with all the conditions of supervised release, including not possessing descriptions of child pornography. Isn't that always true, though, of supervised release, that there's going to be a probation officer supervising? And do we have any authority that says the idea that you could get permission from your probation officer gets out of a problem that would otherwise exist? Well, yes. I think that the court has often said that when a probation officer, for example, can describe what the conditions are, like what association is, it cures any vagueness problem, that a probation officer is charged with deciding when and where sexual offender treatment is undergone drug treatment. So, yes, I think that is absolutely a backstop under this Court's precedent. And in this case, it's a situation where the probation officer can say, no, you're not going to write a sexual autobiography because that would conflict with something else, whereas in the Cope decision, there was no intermediary. But do we have a case, can you cite a case that talks about a probation officer's permission getting you out of an overbreath problem, like where it's too restrictive than it needs to be, more restrictive than it needs to be? It's no. I mean, I think that's different. Those are different sort of issues. And I don't think that the issue here is that it's more restrictive than it would need to be. Well, I don't think it's a vagueness problem, right? If he's saying I might need this for sexual offender treatment. Right. And you're saying, well, he could just get permission from the probation officer, isn't that a type of argument of this is more restrictive than it needs to be? He doesn't need. Oh, no. I'm saying, Your Honor, that the probation officer is directing the sexual offender treatment. So the probation officer is the one who would have to say, you need to violate the other, the terms of your supervised release conditions by writing sexual autobiographies and such. And that is not a reasonable instruction. I'm sorry, how do we know that, that the probation officer is going to be doing any sexual offender treatment here? No, no. So provision number five, condition number five, which is that excerpts of record number five, sorry, six, says the defender shall participate in a sex offender treatment program as directed by the probation officer. That clause, as directed by the probation officer, is absent from COPE. So you have somebody here in this case who is going to be directing what is going to be happening. And we can, I don't think we can fairly assume, in fact, we have to assume exactly the opposite, that the probation officer would then direct the defendant to contradict provision number six or provision number seven. That clause was not available in COPE. And in this case, if, you know, 40 years hence, when he's still undergoing sex offender treatment, he decides, you know what, it's extremely important. I've talked with the treatment provider. It's extremely important that he possess this child pornography because he needs to, or write a sexual autobiography. They can then petition the district court for a modification of the terms. But there is not a situation here inherently, as there was in COPE, where the defendant is going to put, be put between a rock and a hard place. You have to either comply with one provision and, sorry, complying with one provision would be a violation of another condition. You talked about the direct view. Absolutely. Primarily for use by individuals under 18. This is somewhat of a problematic condition. So as I understand the government's position is that you would construe this provision to mean that parks, swimming pools, playgrounds, youth centers, et cetera, are all modified by the phrase primarily used by persons under the age of 18? Yes. Okay. Because it says, and other places, which suggests that those are examples of places that are primarily used by individuals under the age of 18. Okay. So now I can understand that a playground would fall in that category, but in California, for example, a beach, our public beaches are classified as parks. So in your view, is a beach a place that is primarily used by persons under the age of 18? It would depend on the beach, Your Honor. I mean, there are some beaches, for example, there's a cove in Muir Woods, Muir Woods, which is primarily used by children. That's where people take the schools, take their kids to, you know, school trips, and that's sort of primarily the use of that little cove. But normally beaches are not. They're public access. They're general access places. So Golden Gate Park, for example, in your view, would not be a place that's used primarily by persons under 18? Not the park as a whole, but of course, Corret Children's Quarter, which is a playground within the park. Within the park. Yes. So let's say that this individual is released and finds an apartment, is lucky enough to get an apartment in Pacific Heights or somewhere, which is on the top of one of these big hills where you have these fantastic views, and he can see Golden Gate Park. Is he restricted from living because he's in direct view of a park where there's a playground and which is used for people that are under 18? I don't believe so, Your Honor. First of all, there's a backstop again, which is that residences have to be approved by the probation officer. So there's no vagueness issue there because you have to get approval. But secondly, I think what the government says is that it's construed. Well, the probation officer could say, look, you can see Golden Gate Park. Well, we believe that it's fairly construed as the direct view of the children who are the primary users of those locations because, again, it has to be construed within the three purposes of supervisory office. So, you know, I hear all that, but it's so interesting because we basically, and I accept the government's construction, but we basically rewritten the condition to be more precise, right? We've interpreted it that way. And I want to make this point, which is an important point about amendment versus construction. This Court's practice is when it's within, when it's construing something with respect to the three purposes of supervisory release, it's always just interpreted that. So that's the truth. That's what happened in Quinzon, where the Court interpreted computer monitoring to be limited to the Internet because the issue was the defendant used the Internet to look at child pornography. In NERC, the Court interpreted sexually explicit material with respect to adults to be adult pornography. In Goddard, it interpreted software modifications to exclude routine. In Esparza, it also construed medication, condition to be limited to medications that are not psychotropic. Whereas in COPE, for example, it talked about amendment because the amendment in that case was external to the three purposes of supervisory release. In that case, it was including an amendment that had nothing to do with it. The purposes would actually say, no, you can't have these sexually explicit materials. And it was saying, no, we're making an exception for sexual treatment or, often, treatment. We're making an exception for collateral attack. And so that wasn't just a narrowing within the constraints of those three purposes. But this Court has traditionally not chosen, the favored path is not to remand and use judicial resources to make these, sorry, to impose these limitations and readings on this, particularly under the plain error standard, where the district court had no reason to make these clarifications on the record because, despite having every opportunity to raise these objections at trial, the district, sorry, Zara never did, not a single time. Not even. Sotomayor, let me ask you just one further point, then. So this person could, under this condition, somebody on supervised release, like Mr. Zara, could live across the street from Golden Gate Park as long as he couldn't see the children's playground, correct? Well, couldn't see the children that are there. The issue is access. Well, he might see children because they walk by there to get to the children's playground because there's trees and there's different aspects of Golden Gate Park. Right. I think that's a fair construction, but again, the condition requires permission by the probation officer. So he could live across the street from Golden Gate Park because he can't actually see the kids, but he couldn't live in a high-rise if he could see the kids. I think it's a fair construction that, yes, the issue is his direct access, his viewing of children as well as his access to children, given that he took pictures of his goddaughter, non-pornographic pictures, then put it on the internet and invited pedophilic sort of fantasies. He had access to children through his stepdaughters. He molested them, created child pornography, and then at every turn, this defendant sought to put himself in situations where he would work with children as a counselor. Do you think direct view means unaided, just vision unaided? Or if you could use a telescope to take a picture of the kids in the playground, is that a problem? I think that in this particular case, it's just unaided vision because you have nothing in the record that suggests that he was using telescopic lenses. In a different case, maybe that would be different, but not in this case, Your Honor. If this Court has no more questions, I would ask for an affirmance. All right. Thank you. We'll give you a minute for rebuttal if you want it. Very briefly, with regard to the direct view condition, the residency condition, a number of cases in this circuit, Cope being one of them, discussing this principle, conditions, these conditions must be construed literally, and the government is not permitted to offer narrowing constructions on appeal. Cope is one decision, and there's quite a few that say that. Regarding the permission by the probation officer, the probation officer does have to approve the residency, but has no discretion to narrow it. The probation officer is going to be guided by these overbroad terms, and probation officers don't have to, unless the condition explicitly gives them discretion, they have none. They have only the duty to enforce the literal terms of the condition. Thank you. Thank you. Thank you both for your argument this morning. The case of United States v. Zara is now submitted.
judges: McKeown, Murguia, Friedland